Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| ASOCIACIÓN DE RESIDENTES DE ALTAMIRA<br><br>Demandante-Apelada<br><br>v.<br><br>JOSEFINA SAVIÑON LOVELOT<br><br>Demandada-Apelante | KLAN202301043 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm.: SJ2020CV01914<br><br>Sobre:<br>Cobro de dinero (R.60) |

Panel integrado por su presidente, el Juez Rivera Torres, la Jueza Rivera Pérez y la Jueza Prats Palerm.

*Prats Palerm, Jueza Ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 11 de abril de 2024.

El 21 de noviembre de 2023, la parte apelante, señora Josefina Saviñon Lovelot (en adelante, "apelante" o "señora Saviñon"), instó el presente recurso de Apelación para que revoquemos la *Sentencia* emitida el 11 de julio de 2023, notificada el 13 de julio de 2023, por el Tribunal de Primera Instancia (en adelante, "TPI"), Sala Superior de San Juan. Mediante el referido dictamen, el TPI dictó Sentencia Sumaria a favor de la parte demandante, Asociación de Residentes de Altamira, Inc. (en adelante, "apelados" o "ARA" o "Asociación") condenando a la parte apelante al pago de $11,367.50 por concepto de cuotas de mantenimiento acumuladas a la fecha del 30 de junio de 2022, más las cuotas devengadas desde entonces a razón de $70.00 mensuales, más los recargos y/o intereses y/o penalidades que apliquen hasta la satisfacción total de la sentencia, las costas y gastos por $130.00 y la cantidad de $3,388.00 por concepto de honorarios de abogados a favor de la Asociación.

Luego de examinar la aludida *Sentencia,* junto con los documentos que conforman el apéndice al alegato de los apelantes, así como el alegato en oposición de la Asociación, se *Confirma* la misma. Veamos.

## I.

La Asociación de Residentes de Altamira, Inc. presentó el 2 de marzo de 2020 una *Demanda* en Cobro de Dinero al amparo de la Regla 60 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 60, contra la señora Saviñon para reclamarle el pago de una deuda ascendente a $11,328.75, por concepto de cuotas de mantenimiento, derramas, gastos operacionales, todos estos del Sistema de Acceso Controlado, seguridad y mantenimiento de áreas vecinales. Además, dicha suma continuaría aumentando a razón de $70.00 mensuales. También se reclaman costas y gastos por $130.00 y $3,388.13 en concepto de honorarios de abogados.

La señora Saviñon presentó *Contestación a la Demanda* el 25 de mayo de 2021.[1] En la misma, niega que adeude cantidad alguna en concepto de cuota de mantenimiento, ni por ningún otro concepto. Además, alega que siempre ha sido dueña de la propiedad (desde el año 1983) y que ésta rechazó el control de acceso en dicha urbanización, desde antes de ser implementado.

Culminado el descubrimiento de prueba, el 30 de junio de 2022, ARA presentó una *Solicitud de Sentencia Sumaria.* En apretada síntesis, la Asociación alega que, la propiedad de la señora Saviñon había sido vendida a Nancy Arias Gómez mediante la *Escritura Número cincuenta y dos (52)* del 23 de octubre de 1995. Añade que, la propiedad fue nuevamente adquirida por la señora Saviñon mediante la *Escritura Número veintiuno* (21) otorgada el 25

---

[1] Surge del expediente de SUMAC que el caso estuvo paralizado ante las órdenes administrativas emitidas por el COVID.

de octubre de 1995. Así las cosas, arguye que, habiendo adquirido la propiedad en octubre de 1995, a la señora Saviñon le corresponde la obligación del pago de las cuotas de mantenimiento a partir de noviembre de 1995.

El 14 de agosto de 2022, la señora Saviñon presentó su *Oposición a Moción de Sentencia Sumaria* en la cual reitera que siempre ha sido dueña de la propiedad y que nunca fue vendida porque no recibió dinero alguno.

Luego, el 11 de julio de 2023, el TPI emitió una *Sentencia*, notificada el 13 de julio de 2023. Mediante el referido dictamen el TPI declaró Ha Lugar la moción de sentencia sumaria presentada por la Asociación y condenó a la señora Saviñon al pago de $11,367.50, hasta el 30 de junio de 2022, más las cuotas devengadas desde entonces, a razón de $70.00 mensuales, más los recargos, intereses y/o penalidades que apliquen, $130.00 por concepto de costas y gastos, y $3,388.00 por concepto de honorarios de abogado. El TPI realizó las siguientes determinaciones de hechos:

1. La Parte Demandante, Asociación de Residentes de Altamira, Inc., es una corporación sin fines de lucro debidamente registrada en el Departamento de Estado bajo el número 17,830, desde el 5 de noviembre de 1987. (Anejo 1 de la Solicitud de Sentencia Sumaria)

2. La Parte Demandada adquirió la propiedad objeto del presente pleito el 25 de marzo de 1983, mediante la Escritura Núm. 32 sobre Compraventa, ante el Notario Jorge Luis Aquino Núñez. (Anejo 2 de la Solicitud de Sentencia Sumaria)

3. El 29 de abril de 1993, la Asamblea Municipal del Municipio de San Juan emitió la Resolución Núm. 74, Serie 1992-93, mediante la cual autorizó el establecimiento de un sistema de control de acceso en la Urbanización Altamira. (Anejo 3 de la Solicitud de Sentencia Sumaria)

4. Durante el proceso de recopilación de endosos que llevaron a cabo los residentes de la Urbanización Altamira con el fin de solicitar la autorización para

el control de acceso, la Parte Demandada no firmó dicho endoso, por lo que fue tratada como opositora conforme a la Ley de Control de Acceso de 1987, según enmendada.

5. En el año 2014, la Asociación encomendó la realización de un estudio de título sobre la propiedad en cuestión. (Anejo 4 de la Solicitud de Sentencia Sumaria)

6. Del estudio de título realizado surgió que la propiedad había sido vendida a Nancy Arias Gómez mediante la Escritura Núm. 52 del 23 de octubre de 1995. (Anejo 5 de la Solicitud de Sentencia Sumaria)

7. Además, surgió de la sección Observación al final del estudio de título que la Sra. Saviñón había adquirido la misma propiedad mediante Escritura de Compraventa número 21 del 25 de octubre de 1995. (Anejo 6 de la Solicitud de Sentencia Sumaria)

8. Esta última escritura de compraventa no fue presentada al Registro de la Propiedad hasta el 18 de septiembre de 2012. El Registrador notificó al Notario otorgante la falta de $8.00 para completar los derechos de inscripción, a y al no ser corregida, el asiento caducó. (Anejo 7 de la Solicitud de Sentencia Sumaria)

9. Habiendo adquirido la propiedad en octubre de 1995, aunque por segunda ocasión, a la Sra. Saviñón le corresponde la obligación de pago de las cuotas de mantenimiento, a partir de noviembre de 1995. El primer requerimiento de pago que la Parte Demandada recibió fue una Carta de Abogado del 19 de septiembre de 2016. (Anejo 8 de la Solicitud de Sentencia Sumaria)

10. El 26 de septiembre de 2016, Horacio A. Grosso Vega envió al correo electrónico del Lcdo. Reinaldo Cintrón Flores un mensaje en blanco que contenía como "attachment" la escritura de compraventa de 1983. (Anejo 9 de la Solicitud de Sentencia Sumaria)

11. El 7 de noviembre de 2016, la Parte Demandante le envió a la Parte Demandada el documento Respuesta a su Reclamación. (Anejo 10 de la Solicitud de Sentencia Sumaria)

12. Tomando en consideración el periodo prescriptivo que establecía el Código Civil de 1930, vigente en esos momentos, corresponde la reclamación de las cuotas que vencieron durante los cinco años

anteriores a la fecha del requerimiento en septiembre de 2016. Es decir, a partir del mes de octubre de 2011.

13.    Según la prueba presentada, la deuda acumulada al 30 de junio de 2022 es por la cantidad de $11,367.50. (Anejo 11 de la Solicitud de Sentencia Sumaria)

Inconforme, la señora Saviñon presentó una *Moción de Reconsideración a Sentencia* el 28 de julio de 2023. En la misma, adujo que el contrato de compraventa entre ella y la señora Arias nunca fue perfeccionado, ya que nunca recibió el pago estipulado en la Escritura y no se llevó a cabo la entrega del inmueble.

El 20 de octubre de 2023, el foro de instancia declaró No Ha Lugar la moción de reconsideración mediante *Resolución*.

Insatisfecha aún, el 21 de noviembre de 2023, la señora Saviñon presentó un recurso de *Apelación* solicitando que revoquemos la *Sentencia* sumaria del 11 de julio de 2023. La apelante realiza el siguiente señalamiento de error:

**Erró el TPI al concluir que procedía dictarse Sentencia Sumaria conforme a Derecho porque no existe controversia con relación a la obligación de la parte demandada de pagar cuotas de mantenimiento, ni razón alguna eximente de responsabilidad, puesto que la parte demandada adquirió la propiedad luego de establecido el sistema de control de acceso, cuando del récord surge que la apelante siempre fue la titular con posesión de la propiedad.**

La Asociación presentó su alegato en oposición el 21 de diciembre de 2023.

Revisados los escritos de las partes y los documentos que obran en autos, estamos en posición de resolver.

**II.**

**-A-**

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R.36, [...] permite a los

tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones donde no exista controversia material de hecho que requiera ventilarse en un juicio plenario, y el derecho así lo permita. *León Torres v. Rivera Lebrón*, 204 DPR 20 (2020). Mediante el mismo, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *Íd.* Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Íd.*

[A]l presentar una moción de sentencia sumaria, al amparo de [la] Regla 36.2, [se] deberá cumplir con los siguientes requisitos de forma, los cuales están preceptuados en la Regla 36.3 de Procedimiento Civil: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. *Pérez Vargas v. Office Depot/Office Max, Inc.*, 203 DPR 687 (2019).

Al considerar la solicitud, el Tribunal deberá asumir ciertos los hechos no controvertidos que se encuentran sustentados por los documentos presentados por el promovente. *E.L.A. v. Cole*, 164 DPR 608, 626 (2005). La inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien

solicita la sentencia sumaria, pues sólo procede si bajo ningún supuesto de hechos prevalece el promovido. *Íd.*, pág. 625. Conforme a esta normativa procesal, la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación. *León Torres v. Rivera Lebrón,* supra. Por el contrario, viene obligada a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente en su solicitud puesto que, de incumplir, corre el riesgo de que se dicte sentencia sumaria en su contra, de la misma proceder en derecho. *Íd.*

En la oposición a una solicitud de sentencia sumaria, el promovido debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *Íd.* Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la Regla 36.3 de Procedimiento Civil. *Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd.* Al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia y ser consciente en todo momento que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *Íd.*

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Rivera Rodríguez v. Rivera Reyes*, 168 DPR 193, 212 (2006). Además, existen casos que no se deben resolver mediante

sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens,* 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o aquellos en los que estén presentes cuestiones de interés público". *Íd.*, pág. 579.

Por otro lado, sabido es que, cuando un Tribunal emita una sentencia, especificará los hechos que fueron probados y consignará separadamente sus conclusiones de derecho. 32 LPRA Ap. V, R. 42.2. En lo pertinente al caso, si el Tribunal deniega una moción de sentencia sumaria, no concede todo el remedio solicitado o no resuelve la totalidad del pleito, la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4, expresa que "será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos […]"Lo anterior simplifica el desfile de prueba en el juicio, pues los hechos no controvertidos se consideran probados. *Ramos Pérez v. Univisión,* 178 DPR 200, 221 (2010).

Además, y según dispuesto por el Tribunal Supremo de Puerto Rico, los criterios de revisión apelativa ante una sentencia sumaria son los siguientes: (1) no se puede considerar prueba no presentada ante el nivel de instancia; (2) no se puede adjudicar hechos materiales en controversia; (3) la revisión apelativa es *de novo*; (4) se debe examinar el expediente de la manera más favorable hacia quien se opone a la solicitud de sentencia sumaria; (5) se debe observar que las mociones cumplan con los requisitos de la Regla 36 de Procedimiento Civil de 2009, *supra,* y lo discutido en *SLG Zapata Rivera v. JF Montalvo,* 189 DPR 414 (2013); (6) debe exponer los hechos materiales controvertidos y los incontrovertidos si los

hubiese; y (7) ante un caso donde no existan hechos materiales en controversia, el tribunal apelativo procederá a revisar *de novo* si el TPI aplicó correctamente el Derecho. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 118-119 (2015).

Asimismo, nuestro más Alto Foro señaló que:

[...] el Tribunal de Apelaciones debe: (1) examinar de novo el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, supra, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de novo si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 679 (2018).

Conforme a lo anterior, nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria. *González Santiago v. Baxter Healthcare*, 202 DPR 281 (2019). A tal efecto, nuestra revisión es una de novo, y el análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, supra, y su jurisprudencia interpretativa. Íd. De esta manera, si encontramos que los hechos materiales realmente están incontrovertidos, debemos revisar de novo si el Tribunal de Primera Instancia aplicó correctamente el derecho. *Íd.*

**-B-**

La Ley Núm. 21 de 20 de mayo de 1987, según enmendada, mejor conocida como la *Ley de Control de Acceso Vehicular*, 23 LPRA sec. 64 *et. seq.*[2], faculta a los municipios a "conceder permisos para

---

[2] Esta ley estaba vigente al momento de los hechos y para la fecha de la presentación de la causa de acción. Dicho estatuto fue derogado en virtud de la Ley Núm.107-2020, mejor conocida como "Código Municipal de Puerto Rico", según enmendado, el cual regula en su Libro II sobre servicios municipales en el Capítulo I lo relacionado al control de acceso en las urbanizaciones.

el control del tráfico de vehículos de motor y del uso público de las vías públicas en paseos peatonales, calles, urbanizaciones y comunidades residenciales públicas o privadas, con un solo acceso de entrada y salida o que tengan más de un acceso de entrada o salida pero que ninguna de sus vías públicas se use para la entrada o salida de otra calle, urbanización o comunidad que no haya solicitado el control de acceso". 23 LPRA sec. 64. Véase, además, *Asoc. Ctrl. Acc. C. Maracaibo v. Cardona*, 144 DPR 1, 44 (1997).

El propósito de la *Ley de Control de Acceso Vehicular, supra,* fue autorizar a determinadas comunidades a "controlar la entrada a sus calles dentro del área residencial" y permitirles "participar en la lucha contra el crimen al establecer mecanismos que controlen los accesos", disminuyendo de este modo "la labor de vigilancia, ya sobrecargada, que presta la Policía de Puerto Rico". *Exposición de Motivos de Ley de Control de Acceso Vehicular, supra.* Véase, además, *Caquías v. Asoc. Res. Mansiones Río Piedras*, 134 DPR 181, 186-187 (1993).

En lo que nos compete, la *Ley de Control de Acceso Vehicular*, *supra*, faculta a las asociaciones de residentes para que, luego de organizadas y registradas en el Departamento de Estado como instituciones sin fines de lucro, se encarguen de la administración y el mantenimiento de los sistemas de control de acceso. 23 LPRA sec. 64a(a) y 64d-3(a). Ello incluye la facultad de imponer y cobrar una cuota, y reclamar la deuda a un propietario por este concepto por la vía judicial. *Íd.*

Así también, la Ley menciona las personas que están obligadas a contribuir con los costos de mantenimiento del control de acceso. En su parte pertinente, la Sección 10 del estatuto dispone:

a. [...]

La obligación de pago recaerá en los siguientes propietarios:

1) Los propietarios de fincas en las que se haya inscrito la autorización o permiso bajo el procedimiento establecido en la sec. 64d-1 de este título.

2) Los propietarios que autorizaron la solicitud para establecer el control de acceso, según fue implantado.

3) Todo propietario adquirente de una finca, ubicada en una urbanización, calle o comunidad que ha sido autorizada por el municipio correspondiente para controlar el acceso o que, a la fecha de la compraventa, se encontrara en trámite de obtener el consentimiento de tres cuartas (3/4) partes de los propietarios y así conste en actas.

4) Cuando la solicitud fue hecha por el urbanizador, desarrollador o constructor, el pago de cuota será obligatorio para toda persona que advenga dueño de inmueble.

5) Los propietarios que no autorizaron expresamente el establecimiento del sistema de control de acceso, pero que en fecha posterior se comprometieron al pago mediante contrato escrito.23 LPRA sec. 64d-3.

De modo que, las personas obligadas a contribuir con el costo de mantenimiento del control de acceso, está todo propietario adquirente de una finca ubicada en una urbanización que ha sido autorizada para controlar el acceso. Se ha señalado que en esos casos se trata de aquellos que han adquirido su finca luego de implantado el control de acceso. *Caquías v. Asoc. Res. Mansiones Río Piedras, supra*, págs. 210-211. Por tanto, quedan automáticamente obligados a contribuir con los costos de mantenimiento aquellos adquirentes que al momento de la compraventa se haya obtenido o se haya comenzado el trámite para obtener el consentimiento de los propietarios. *Residentes Sagrado Corazón v. Arsuaga,* 160 DPR 289, 320-321 (2003).

Por otra parte, la Sección 10(b), *supra*, para el cobro de las cuotas de mantenimiento en atraso, establece el requerimiento de pago mediante correo certificado con acuse de recibo como paso previo a exigir el pago por la vía judicial. Dicha disposición establece lo siguiente:

> El propietario que esté en mora será requerido de pago mediante correo certificado con acuse de recibo y de no efectuar el pago en el plazo de quince (15) días, a partir del recibo de la notificación por correo certificado se le podrá exigir el pago por la vía judicial, en cuyo caso el tribunal impondrá al deudor moroso el pago de costas y honorarios de abogado. 23 LPRA sec. 64d-3(b).

**-C-**

El Artículo 1206 del Código Civil de Puerto Rico, 31 LPRA ant. sec. 3371, establece que "[e]l contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio"[3]. Asimismo, el Artículo 1210 del referido estatuto, 31 LPRA ant. sec. 3375, dispone que los contratos se perfeccionan por el mero consentimiento, desde ese momento las partes no solo se obligan al cumplimiento de lo pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley.

Por otro lado, los contratos son negocios jurídicos que existen desde que concurren los requisitos de consentimiento, objeto y causa. 31 LPRA ant. sec. 3391. Es decir, el contrato surge al momento en que las partes consienten en obligarse a cumplir con determinadas prestaciones. 31 LPRA ant. sec. 3371; *Amador v. Conc. Igl. Univ. De Jesucristo*, 150 DPR 571, 581-582 (2000).

En lo que compete a esta controversia, entre los contratos que regulan nuestro Código Civil, se encuentra el contrato de compraventa. Este tipo de contrato es uno bilateral que crea obligaciones recíprocas. *Martínez v. Colón Franco, Concepción*, 125 DPR 15, 32 (1989). El Artículo 1334 del Código Civil, 31 LPRA ant. sec. 3741, lo define como el contrato mediante el cual una de las partes contratantes se obliga a entregar una cosa determinada y el otro a pagar por ella un precio cierto. Es decir, se forma cuando las

---

[3] El Código Civil de Puerto Rico de 1930 fue derogado y sustituido por la Ley Núm. 55-2020, según enmendado, conocida como "Código Civil de Puerto Rico" de 2020. Hacemos referencia al Código Civil derogado por ser el derecho vigente y aplicable a la controversia ante nuestra consideración.

partes logran un acuerdo respecto a la cosa y al precio, "siendo estos últimos los elementos objetivos o reales de dicho contrato". *Bco. Popular v. Registrador*, 181 DPR 663, 672 (2011).

Así las cosas, el Artículo 1339 del Código Civil, 31 LPRA ant. sec. 3746, expresamente dispone que la venta se perfeccionará entre el comprador y vendedor, y será obligatoria, si hubieren convenido la cosa y el precio, **aunque ni la una ni el otro se hayan entregado**. (Énfasis suplido).

## III.

La señora Saviñon nos solicita que revisemos una sentencia emitida de forma sumaria, mediante la cual el TPI la condenó al pago de cuotas de mantenimiento. En síntesis, la señora Saviñon arguye, como único señalamiento de error, que el foro de instancia erró al dictar sentencia sumariamente y determinar que la apelante está obligada al pago de las cuotas de mantenimiento, a pesar de esta alegar haber sido titular de la propiedad de manera continua desde el 1983.

Evaluada *de novo* la solicitud de sentencia sumaria concernida y su oposición, así como la prueba documental anejada, en armonía con la doctrina establecida en el caso de *Meléndez González, et al. v. M. Cuebas*, *supra*, y subsiguientes, concluimos que no existe controversia sobre hechos materiales que impidan resolver el caso de autos sumariamente.

Según lo esbozado por la apelante, la controversia medular del caso gira en torno a determinar si la señora Saviñon debe ser considerada como una nueva adquirente voluntaria, para fines de la aplicación de la Ley de Control de Acceso Vehicular. De los hechos surge que, la señora Saviñon adquirió la propiedad ubicada en la Urbanización Altamira en el 1983, previo al establecimiento del sistema de control de acceso. Asimismo, durante el procedimiento

de recopilación de endosos para solicitar la autorización del control de acceso, la apelante se opuso. Por esta razón, estuvo exenta del pago de las cuotas de mantenimiento, conforme dispone la Ley de Control de Acceso Vehicular.

No obstante, el 23 de octubre de 1995, la señora Saviñon otorgó una escritura de compraventa, *Escritura Número cincuenta y dos (52),* en la cual la apelante consintió y se obligó a la venta de la propiedad a la señora Arias. Asimismo, y por razones que no nos conciernen, el 25 de octubre de 1995, la señora Arias, como vendedora, y la señora Saviñon, como compradora, suscribieron otra escritura de compraventa, *Escritura Número veintiuno (21).* Mediante la referida Escritura, la señora Saviñon, nuevamente, adquirió la propiedad. Así, a sabiendas, adquiriendo de manera voluntaria una propiedad sujeta a un gravamen por virtud de la Ley de Control de Acceso Vehicular. De esta manera, quedó obligada al pago de las cuotas de mantenimiento de la propiedad.

Sobre la aludida venta a la señora Arias y subsiguiente compra de la señora Saviñon, la apelante alega que nunca cedió la posesión de la propiedad a la señora Arias, por lo cual arguye que siempre ha sido la propietaria. No le asiste la razón. La misma *Escritura Número cincuenta y dos (52)* dispone que "[l]a compradora entra en posesión del inmueble […] por el sólo otorgamiento de esta escritura". Conforme a lo anterior, la apelante perdió la posesión de la propiedad y la volvió a adquirir el 25 de octubre de 1995.

Resulta forzoso concluir que el foro apelado no incidió al disponer de la controversia de manera sumaria. Esta determinación sumaria se sustenta por la prueba documental, no contradicha, y es adecuada en derecho, de modo que solo procede la confirmación de la *Sentencia* apelada.

**IV.**

Por los fundamentos expuestos, se *Confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones